UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA HENKEL | ) | CASE NO. 1:10CV2889 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| Defendant | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Linda Henkel Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his December 17, 2009 decision in finding that Plaintiff was not disabled because a significant number of jobs in the national economy accommodated Plaintiff's residual functional capacity (RFC) and vocational profile (Tr. 21). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I. PROCEDURAL HISTORY

On January 30, 2007, Plaintiff applied for DIB and SSI, alleging disability as of November 1, 2000 (Tr. 122-28). Her disability applications were denied initially and on reconsideration (Tr. 66-69). She appeared with counsel and testified at an administrative hearing on December 7, 2009 before an ALJ (Tr. 30-65). At the hearing, Plaintiff's counsel asked to amend the alleged onset date to November 1, 2008 (Tr. 37-38), which was granted. A vocational expert also testified at the hearing

1

(Tr. 58-63).

On December 17, 2009, the ALJ denied Plaintiff's disability claim in a written decision(Tr. 9-29). The ALJ found that Plaintiff had not performed substantial gainful activity since the date of her alleged onset of disability and had severe impairments, but none of them, alone or in combination, met or equaled the criteria of the Listings (Tr. 14-17). The ALJ found Plaintiff was limited to light work that allowed changing positions and did not involve concentrated exposure to dust, fumes, or gas; temporary extremes or exposure to high humidity; climbing ladders, ropes, or scaffolds; or more than occasional stooping (Tr. 17-21). Based on these restrictions, she was unable to perform any past relevant work (Tr. 21). Relying on vocational expert testimony, the ALJ concluded that a significant number of jobs in the national economy accommodated Plaintiff's residual functional capacity and vocational profile, and, therefore, she was not disabled (Tr. 21). Plaintiff requested review of the ALJ's decision (Tr. 8). On October 26, 2010, the ALJ's decision became final when the Appeals Council denied Plaintiff's request for review (Tr. 1-3). Plaintiff seeks judicial review under 42 U.S.C. Sections 405(g) and 1383(c)(3).

## II.    **STATEMENT OF FACTS**

Plaintiff was born on November 28, 1962 and was forty-seven years old at the time of the ALJ's decision (Tr. 122). She graduated from high school (Tr. 154, 170). She was licensed as a beautician and had worked for about twenty-five years as a hairstylist (Tr. 40-41, 156, 174-79, 524). She last worked as a hairstylist in November 2000 (Tr. 524). After that date, Plaintiff worked at various jobs, as a telephone answerer for a church in 2002, a fast food clerk in 2004, a home health aide in 2005, a fast food restaurant marketing employee from 2005 to 2008, and a shoe organizer in a discount store in 2006 (Tr. 131-36, 156). Her earnings record showed wages through 2008 (Tr. 130-

33). She has no past relevant work (Tr. 21, 56, 523).

### III.    SUMMARY OF MEDICAL EVIDENCE

In January 2007, Plaintiff was hospitalized for two days for difficulty breathing (Tr. 427-65). Pulmonary function testing showed findings at the lower limit of normal, at 80% of predicted volume (Tr. 428, 448).  The spirometry test was normal (Tr. 428, 448).  She was treated with antibiotic and steroid medication, and her condition had improved by the time she was discharged from the hospital (Tr. 428-29).  She also was prescribed inhalers (Tr. 449).  A chest x-ray showed chronic interstitial lung changes without infiltrate or effusion, and a mild hilar prominence that could represent lymphadenopathy (Tr. 444).  Her symptoms were likely due to sarcoid exacerbation, but acute bronchitis also was considered a possibility (Tr. 429).

In March 2007, Linas F. Vaitkus. M.D. saw Plaintiff for possible sarcoidosis (Tr. 571).  Dr. Vaitkus reported that Plaintiff had smoked for two to three years in the 1980's, and had worked as a hairdresser (Tr. 571).  On examination, Plaintiff's lungs were clear, and she had no peripheral edema, calf tenderness, or neurological deficits (Tr. 571).  Chest x-rays done in January 2007 showed chronic interstitial lung disease (Tr. 571).  Dr. Vaitkus prescribed an inhaler (Tr. 571).  A CT scan in April 2007 showed pulmonary nodules consistent with sarcoidosis (Tr, 572).  Dr. Vaitkus treated Plaintiff's lung condition through July 2007 with antibiotics and Prednisone (Tr. 571-77).

In April 2007, Sally Felker, Ph.D., an examining psychologists, evaluated Plaintiff's mental condition (Tr. 508-12).  Plaintiff told Dr. Felker that she had respiratory problems, carpal tunnel syndrome, and back problems (Tr. 509).  She received medication for depression from her family physician (Tr. 510).  Dr. Felker found her primary diagnosis was depression (Tr. 511).  Plaintiff told Dr. Felker that she saw her children off to school, and when her children arrived home from school, she helped them with their homework and cooked simple dinners in the microwave oven (Tr. 511).

Plaintiff took her children anywhere they needed to go after school (Tr. 511).  On pleasant days, she went for walks (Tr. 511).  Plaintiff told Dr. Felker that she spent most of her time at home (Tr. 511).  She talked on the telephone with friends, attended church regularly, and performed church volunteer work (Tr. 511).  During testing, Dr. Felker noted that Plaintiff's attention span and concentration were adequate, performing serial seven subtraction correctly and properly interpreting a proverb (Tr. 511).  Dr. Felker opined that Plaintiff demonstrated minimal to possibly moderate restriction of her ability to concentrate for sustained tasks, but her ability to understand and follow instructions was not impaired (Tr. 511).  She had a mild to possibly moderate restriction of her ability to relate to others and deal with the general public (Tr. 511).  Dr. Felker opined that Plaintiff was moderately restricted in her ability to relate to work peers and supervisors and tolerate the stress of employment (Tr. 511).

In May 2007, Nancy McCarthy, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and assessed her mental functioning (Tr. 545-58).  Dr. McCarthy considered the evidence of affective disorders and anxiety-related disorders, and concluded that Plaintiff's mental impairments were not severe (Tr. 545).  Dr. McCarthy found Plaintiff had mild limitations in all areas of her mental functioning (Tr. 555).  In assessing her functioning, Dr. McCarthy noted that she had considered Plaintiff's statements about her activities of daily living, her use of medication to control her symptoms, the assessment of the consultative examining psychologist, Dr. Felker, and her lack of current mental health treatment (Tr. 557).  Dr. McCarthy stated that she gave weight to the findings and conclusions of Dr. Felker, since there was no other recent psychological treatment (Tr. 557).  Dr. McCarthy considered Plaintiff's statements that she limited her outdoor activities due to environmental elements that might aggravate her breathing, and that she lacked energy due in part to her physical problems (Tr. 557).  Dr. McCarthy concluded that Plaintiff seemed to focus on her physical problems, and these were more limiting than her mental condition (Tr. 557).

4

In June 2007, Charles Derrow, M.D., a state agency physician, reviewed Plaintiff's medical records and assessed Plaintiff's physical functioning (Tr. 559-60). Dr. Derrow indicated that he had considered Plaintiff's allegations of breathing problems, back problems, carpal tunnel syndrome, weakness, and muscle spasms (Tr. 560). Dr. Derrow noted that Plaintiff's lung function tests were normal, and that her sarcoidosis symptoms were mild (Tr. 560). She had moderate sleep apnea (Tr. 560). She had a normal, unassisted gait, and she had some loss of disc space at L5, causing some leg pain and weakness (Tr. 560). She had decreased deep tendon reflexes with radiculopathy, and limited ranges of back motion (Tr. 560). Dr. Derrow concluded that Plaintiff retained the capacity for light work (Tr. 560), involving occasional climbing of ladders, ropes, or scaffolds, and occasional stooping (Tr. 561). She also needed to avoid moderate exposure to extreme cold and heat, humidity, fumes, odors, dusts, gases, and poor ventilation (Tr. 563).

In December 2007, Plaintiff had pulmonary function studies that showed she had a possible restrictive lung defect, and a mildly reduced diffusion capacity (Tr. 620). She had a mild degree of worsening since her last testing in February 2007 (Tr. 620).

In February 2008, Plaintiff underwent pulmonary function studies that showed normal expiratory flows and normal forced vital capacity (Tr. 632-33). At the same time, Dr. Vaitkus stated that a bronchoscopy with biopsies showed non-necrotizing granuloma and sarcoidosis of the left lung (Tr. 631). Plaintiff had stopped taking steroid medication (Tr. 631). Dr. Vaitkus stated that the testing had confirmed her diagnosis of sarcoidosis, and that she had been off steroids for about three or four months (Tr. 631).

Dr. Vaitkus saw Plaintiff again for her lung condition on February 6, 2009 (Tr. 608, 630) and March 19, 2009 (Tr. 625). Plaintiff brought disability forms, but Dr. Vaitkus stated that he could not fill them out, because Plaintiff had not had pulmonary function tests for a long time (Tr. 608). Dr.

5

Vaitkus noted that Plaintiff had stopped using her CPAP machine, and stopped taking her prescription for Singular (Tr. 609). On February 11, 2009, Plaintiff underwent pulmonary function studies, which showed normal expiratory flows and normal forced vital capacity (Tr. 610-11, 628-29). In March 2009, a CT scan of her chest showed an increase in the size and number of small pulmonary nodules, and findings most likely representing worsened sarcoidosis (Tr. 612, 625-27). She had no fibrosis of the lungs (Tr. 612, 627). Plaintiff's prescription for Prednisone was continued, and follow-up scheduled for two to two and a half months (Tr. 625).

In June 2009, Denise Stern, M.D. told Plaintiff that she should have her disability forms completed by Dr. Vaitkus, since that doctor was more familiar with Plaintiff's lung condition (Tr. 637). Dr. Stern saw Plaintiff on three occasions in 2007 (Tr. 580-96), and two occasions in 2008 (Tr. 636-45).

On December 2, 2009, Plaintiff underwent a functional capacity assessment (Tr. 646-59). The occupational therapist suggested that Plaintiff put forth a poor effort, which was not necessarily related to pain, impairment, or disability (Tr. 646). Plaintiff was considered to be physically deconditioned (Tr. 646). Nevertheless, during the evaluation, she was able to lift and carry twenty-five pounds for fifteen feet; she could lift fifteen pounds from her waist to her shoulder; and she could lift twenty pounds with her legs from the floor to waist level (Tr. 646).

After the ALJ's decision on December 17, 2009, Plaintiff submitted medical evidence to the Appeals Council to be considered with her request for review of the ALJ's decision (Tr. 4-6, 660-64). Plaintiff included a February 7, 2010 lumbar MRI scan from Southwest General Health Center (Tr. 660-62), a June 29, 2010 disability certificate from Dr. Blades, stating that Plaintiff must alternate sitting, standing, and walking during the course of her five-hour workday due to symptoms related to a herniated lumbar disc (Tr. 663), and a July 9, 2010 letter from Dr. Morris, that Plaintiff was

6

unable to sit or stand for any extended period of time due to her back condition (Tr. 664). The Appeals Council considered the additional medical evidence, but found it did not provide a basis for changing the ALJ's decision, and, thus, denied Plaintiff's request for review (Tr. 1-5).

This Court will not consider evidence submitted to the Appeals Council for the purpose of substantial evidence review of the ALJ's decision, to the extent that the evidence was not considered by the ALJ.

Evidence first submitted to the Appeals Council may be considered only to determine whether the case should be remanded under sentence six of 42 U.S.C. Section 405(g). Plaintiff has not shown that the evidence was new and material, and that she had good cause for failing to submit the new evidence during the administrative proceedings. 42 U.S.C. Section 405(g) (sentence six). In order to be considered, the reports must relate to Plaintiff's condition on or before the ALJ's decision. *See, Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Furthermore, Plaintiff has not shown this evidence was material for purposes of remand. *See, Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992).

**IV.     SUMMARY OF ACTIVITIES AND TESTIMONY**

Plaintiff reported that she was able to help her children get ready for school and did the housework unless her breathing started to bother her (Tr. 168). She usually stayed home, but would go shopping as long as her children went with her to help with the lifting (Tr. 168). She also had help from her children with laundry (Tr. 168). Plaintiff stated that she had no psychological or psychiatric treatment, was not taking any psychotropic medication, and never required psychiatric hospitalization (Tr. 44, 168).

Bruce Holderead, Ph.D. testified as a vocational expert at Plaintiff's administrative hearing (Tr. 58-63). The vocational expert considered job possibilities in the regional economy for an

individual with Plaintiff's vocational factors of age, education, and work experience, with the following limitations: light work that allowed changing positions, and did not involve concentrated exposure to dust, fumes, or gas; temperature extremes or exposure to high humidity; climbing ladders, ropes, or scaffolds; or more than occasional stooping (Tr. 58-59). The vocational expert identified 4,250 jobs in the regional Northeastern Ohio economy that would accommodate such restrictions, in job categories of cleaner/housekeeper, ticket seller, and office helper (Tr. 59-60). The vocational expert also identified equivalent numbers of jobs in the state and national economies in those job categories (Tr. 59-60). The vocational expert testified that his testimony was consistent with the information contained in the Dictionary of Occupational Titles DOT (Tr. 60). The information regarding the sit-stand option was based on the vocational expert's experience as a vocational rehabilitation counselor, since the DOT did not contain information about sit-stand options (Tr. 61).

## V.   STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(C)and 416.920(c) (1992);

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see,* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20

8

> C.F.R. 404.1520(e) and 416.920(e) (1992);
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The Plaintiff has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to thePlaintiff, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id.,*

9

*Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

**VII.    ANALYSIS**

The Plaintiff raises one issue:

Whether the ALJ erred in his assessment of Plaintiff's residual functional capacity and by relying on an improper hypothetical question to the vocational expert in reaching his decision that Plaintiff is not disabled.

During the sequential analysis, the ALJ determined Plaintiff's residual functional capacity. 20 C.F.R. Sections 404.1520(a)(4)(iv) and (e), 404.1545. Here, the ALJ found that Plaintiff could perform a range of light work that involved lifting up to twenty pounds occasionally and ten pounds frequently; standing, walking, or sitting for a total of six hours in a normal eight-hour workday; a need to change positions briefly, that is, one or less, every sixty minutes; no climbing of ladders, ropes, or scaffolds; occasional stooping; no exposure to high concentrations of dust, fumes, or gases, and no exposure to extreme heat, cold, or humidity (Tr. 17).

In making his functional capacity assessment, the ALJ relied on an assessment completed in December 2009, shortly before her disability hearing (Tr. 646-59). Despite a poor effort on the assessment, the occupational therapist, nevertheless, found Plaintiff was able to lift and carry twenty-five pounds for fifteen feet; she could lift fifteen pounds from the waist to her shoulder; and she could lift twenty pounds with her legs from the floor to waist level, which are consistent with light work (Tr. 646). *See,* 20 C.F.R. Section 404.1567(b).

In addition, the opinion of the state agency reviewing physician, Dr. Derrow, was consistent with the ALJ's findings (Tr. 560-63). According to Dr. Derrow, Plaintiff retained the capacity for light work (Tr. 560), involving occasional climbing of ladders, ropes, or scaffolds, and occasional

10

stooping (Tr. 561). She also needed to avoid moderate exposure to extreme cold and heat, humidity, and fumes, odors, dusts, gases, and poor ventilation (Tr. 563). Since Dr. Derrow's opinion was uncontradicted in the record by any examining or treating physician opinions from the relevant period at issue, from her alleged onset date of November 1, 2008, until the ALJ's decision of December 17, 2009, these restrictions support the ALJ's decision.

The ALJ explained that he agreed with the opinion of the state agency psychologist, Dr. McCarthy, that Plaintiff did not have any significant limitations due to her mental impairment, because Dr. McCarthy's opinion was consistent with the psychological examination findings of Dr. Felker, and Plaintiff lacked psychological treatment, current medication, and any psychiatric hospitalization history (Tr. 16).

In evaluating Plaintiff's residual functional capacity, the ALJ also considered her subjective complaints, but found they were not entirely credible. This Court accords great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of a witness while testifying. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). It is not the province of the reviewing court to ". . . try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The ALJ expressly stated that he had considered Plaintiff's subjective complaints in accordance with the requirements of Social Security Ruling 96-7p and 20 C.F.R. Section 404.1529 (Tr. 17), and set forth the various factors that he had considered in his credibility assessment, including medical records and medical source opinions, objective clinical findings, treatment regimen, and activities (Tr. 17-21). These factors provide substantial evidence to support the ALJ's assessment of Plaintiff's credibility and functioning, and that she was not disabled.

At Step Four, the ALJ determined that Plaintiff was unable to perform any past relevant work (Tr. 21). Once Plaintiff established that she was unable to perform any past relevant work, the burden shifted to the agency to show there were other jobs existing in significant numbers in the economy that the Plaintiff could perform, consistent with her residual functional capacity, and vocational factors of age, education, and work experience (Tr. 21-22). 20 C.F.R. Section 404.1560(b)(3).

Here, the ALJ correctly relied on the vocational expert's evidence to show that Plaintiff could perform other work, since the vocational expert testified in response to an accurate, hypothetical question (Tr. 58-61). *See, Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). The vocational expert considered jobs available in the regional economy, for an individual with Plaintiff's vocational factors of age, education, and work experience, with the following limitations: light work that allowed changing positions, and did not involve concentrated exposure to dust, fumes, or gas; temperature extremes or exposure to high humidity; climbing ladders, ropes, or scaffolds; or more than occasional stooping (Tr. 58-59). The vocational expert identified 4,250 jobs in the regional Northeastern Ohio economy that would accommodate such restrictions, in job categories of cleaner/housekeeper, ticket seller, and office helper (Tr. 59-60). The vocational expert also identified equivalent numbers of jobs in the state and national economies in those job categories (Tr. 59-60). Hence, the vocational expert identified a significant number of jobs that would accommodate Plaintiff's residual functional capacity and vocational profile.

The ALJ credited only those restrictions supported by the record as a whole, and rejected those based on Plaintiff's unsupported allegations. For the above-mentioned reasons, the ALJ correctly relied on the vocational expert's testimony to find Plaintiff was not disabled. Since the ALJ's decision was supported by substantial evidence, it is hereby affirmed.

**VIII. CONCLUSION**

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a range of light work that included a significant number of jobs in the national economy. Hence, she is not entitled to DIB and SSI.

Dated:  March 14, 2012                                           */s/George J. Limbert*
                                                                 GEORGE J. LIMBERT
                                                                 UNITED STATES MAGISTRATE JUDGE